DUARTE, J.,
Concurring and Dissenting.—I concur in all parts of the majority opinion except part IV.B., from which I respectfully dissent.
Absent some farfetched hypothetical, under the majority’s broad holding every weapon possession is armed if charged broadly enough. The majority opinion erases the distinction between possession where the weapon is readily accessible to a defendant and possession where it is not. In my view, while both are valid theories of possession, only the first is armed possession. Thus I am compelled to dissent.
The majority writes that because weapon possession “can be a continuing crime,” “when a weapon is available to a defendant to use offensively or defensively at any time during the actual or constructive possession of that weapon within the time period for which a defendant was charged, the defendant was armed.” (Maj. opn., ante, at pp. 1352-1353; see also id. at p. 1342 [a defendant is armed if “he or she was present with the weapon and had it available for use at any time he or she had actual or constructive possession of it within the time period for which the defendant was charged and convicted” (original italics)].)
*1359 Under the majority’s holding, a hypothetical defendant who acquired a weapon and immediately secured it in a safe, then buried the safe and left the state, remaining away for multiple years, would be classified “armed” with that weapon were he eventually charged with its possession. Apparently, this classification would be valid provided the date range on the charging document encompassed the date of the weapon’s acquisition. This would be true even if the date of the weapon’s acquisition preceded the weapon’s discovery (and the corresponding discovery of defendant’s constructive possession of it) by years. This classification is merited merely because at some point Cat any time”) the defendant placed the weapon in the safe. At the time of its placement, the weapon was readily accessible to him for use. Thus he is forever “armed” with it, despite being many years and miles removed from the weapon at the time of its discovery.
I understand that these are not the facts of Emigdio Valdez’s case; I discuss his specific situation in detail below. But this is the broad effect of the holding’s application.
I disagree with the majority that People v. Bland (1995) 10 Cal.4th 991 [43 Cal.Rptr.2d 77, 898 P.2d 391] compels this conclusion. (See maj. opn., ante, at pp. 1352-1353.) In the drug cases of Bland and People v. Delgadillo (2005) 132 Cal.App.4th 1570 [34 Cal.Rptr.3d 507], both relied on by the majority, because of the proximity of the guns at issue to the drugs, it was clear that the defendants were armed with the guns at the time they were dealing drugs. But Bland and Delgadillo are not weapon possession cases; they are drug cases with weapon enhancements at issue. Those cases start with a completely separate offense from any arming analysis and build on that offense, requiring proof that during commission of the continuing drug offense a defendant had a weapon readily available for use to further that offense. This analysis stands in sharp contrast to the necessary analysis in a weapon possession case where the “armed” analysis is built on the same conduct as the charged possession. The key moment in time as well as in physical location for the “armed” classification in the drug cases is the discovery of the drugs, the charged crime being drug possession for sale. In those cases, at the time the defendants were discovered to be in (constructive) possession for sale of the drugs, the guns were with the drugs, and easily accessible to the defendants while they were selling drugs. If the guns in those cases had been stored away from the drugs at the time the drugs were discovered, the results of those cases would be different.
At the time Valdez was discovered to be in constructive possession of the weapon, it was stored and secured away from him. There is no evidence that Valdez was ever seen in actual possession of the weapon, as far as can be gleaned from this record. In my view, he cannot properly be classified as *1360 armed “during the commission of the current offense” merely because at some unwitnessed point in time he was presumably in the cell with the weapon. As the majority acknowledges (maj. opn., ante, at pp. 1353-1354, fns. 12, 13), published cases have agreed with my position in dicta, but those courts were not directly confronted with a case such as this one, where defendant’s criminal conviction was based solely on evidence of constructive possession. Although I agree that those cases are not directly on point, I find them instructive.
In People v. White (2014) 223 Cal.App.4th 512, 523-524 [167 Cal.Rptr.3d 328], the Fourth Appellate District, Division One analyzed the application of the “armed” classification to the defendant’s conduct as a felon in possession who was spotted by the police in actual possession of the gun—carrying it—and then, witnessed by police, threw the gun into the bed of his truck, from where it was later recovered. I agree that White was armed during the possession offense with which he was charged, as the trial and appellate courts found. But the White court went on to note that although White was observed in actual physical possession of the firearm, conviction under the relevant statute (Pen. Code, former § 12021, subd. (a))[1] could also be under the theory of constructive possession. The court explained that: “while the act of being armed with a firearm—that is, having ready access to a firearm [citing Bland]—necessarily requires possession of the firearm, possession of the firearm does not necessarily require that the possessor be armed with it. For example, a convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not armed with it.” {White, at p. 524.) The felon contemplated by the White court in this analysis surely had ready access to that gun at some point—when he or she placed it in the storage unit, at a minimum. Yet the White court declined to classify that hypothetical felon as armed with the gun, even though he was clearly in constructive possession of it, presumably at the time of its detection. Summing up, the court stressed that White’s offense was one of actual, not constructive, possession of the gun, given that White was carrying the gun at the time he was spotted by the police, and emphasized that for this reason the “armed” classification was appropriate. (See id. at pp. 525-526.)
This court seemed to be in basic agreement that there is a separation between possession and armed possession in People v. Elder (2014) 227 Cal.App.4th 1308 [174 Cal.Rptr.3d 795], citing White and noting that White “makes the point that if constructive possession was the basis for the prior conviction, not every conviction for possession will establish that a defendant was armed.” (Id. at p. 1314, fn. 7.) Elder itself makes the point that “not *1361 every commitment offense for unlawful possession of a gun necessarily involves being armed with the gun, if the gun is not otherwise available for immediate use in connection with its possession, e.g., where it is under defendant’s dominion and control in a location not readily accessible to him at the time of its discovery.” (Id. at pp. 1313-1314.) Although Elder was outside the door of his apartment when the police caught him, there appear to have been two accessible guns inside, as well as a recent photograph of defendant in actual possession of one of the guns. (Id. at p. 1317.) Elders conclusion that the defendant was ‘“armed” with those guns which were immediately inside his apartment is much more defensible than a conclusion that defendant here was ‘“armed” with the altered toothbrush containing the razor, found hidden in one of the cubicles in his shared cell while he was secured in the shower area and unable to get to his cell. The relationship between defendant and his altered toothbrush in this case in precisely that described by the Elder court, ‘“e.g., where [the altered toothbrush] is under a defendant’s dominion and control in a location not readily accessible to him at the time of its discovery.” (Id. at p. 1314.)
The Fifth Appellate District’s People v. Osuna (2014) 225 Cal.App.4th 1020, 1030 [171 Cal.Rptr.3d 55], agrees with the idea that constructive possession does not equate to ‘“armed” possession without at least some indication of ready access in close temporal proximity to the discovery of the offense. Being secured elsewhere and unable to access the cell containing the weapon, let alone the cubicle or the weapon itself, is akin to the hypothetical parolee in Osuna whose bedroom is searched while he is away from home. Although the majority classifies any comparison of Osuna with the instant case as inapt (maj. opn., ante, at pp. 1353-1354), I do not agree that Valdez was ‘“simply in another part of his home” (Id. at p. 1354) while he was held by force in another part of the facility and unable to return to his cell. The record does not indicate that Valdez had any access to his cell while he was detained away from it, much less ready access to the weapon secreted therein. The majority also discusses People v. White (2016) 243 Cal.App.4th 1354, 1361-1362 [197 Cal.Rptr.3d 397], where the Fourth Appellate District, Division Three upheld an ineligibility finding by the trial court based on the armed classification. There, the evidence produced at trial showed that not only was defendant likely carrying the gun in his fanny pack when first observed by law enforcement, but also that he was admittedly within arm’s reach of the gun during the course of the pursuit which resulted in his being apprehended and charged with the gun’s possession. (Id. at p. 1358.)
These cases require at least some evidence of ready access to the weapon at the time its discovery was ongoing, although they are arguably trending toward broadening that requirement. I am not inclined to continue down this slippery slope and further blur the line between actual and constructive *1362 possession, and current and remote availability of the weapon for use.[2] Being armed with a weapon requires possessing that weapon in a manner which heightens the ease and probability of its use. The record shows only that Valdez constructively possessed a sharp object, which was first seen hidden in his cell while he was detained elsewhere.
In People v. Burnes (2015) 242 Cal.App.4th 1452 [195 Cal.Rptr.3d 903], although the defendant admitted possession of a firearm and possession of a deadly weapon with his no contest pleas to those counts, the Sixth Appellate District reversed the trial court’s determination that the defendant was armed for purposes of assessing eligibility for Proposition 47 relief. The reversal was due to the trial court’s reliance on the probation report to find facts supporting its determination; however, had the mere fact of conviction on the firearm and weapon possession counts been enough to establish that the defendant was “armed,” reversal would not have been required. Any error in reliance on the probation report would have been harmless. Thus at least impliedly, the Burnes court agreed that the defendant’s conviction of these possession offenses did not automatically equate to his being armed.
To the extent that the majority relies on policy to justify its broad holding, I certainly agree that weapon possession by prisoners is dangerous. However, defendant’s offense was not classified by the electorate as a disqualifying offense per se. (See § 1170.126, subd. (e)(1), cross-referencing § 667.5, subd. (c).) Only if he were actually “armed” with the weapon “[dluring the commission of the current offense”—constructive possession of the weapon—is he precluded from seeking recall of sentence. (§ 667, subd. (e)(2)(C)(iii); see § 1170.126, subd. (e)(2), cross-referencing § 667, subd. (e)(2)(C)(iii).) If he is permitted to seek recall because he was in constructive possession of the weapon but not armed with it, he is still subject to the trial court’s determination as to whether his resentencing poses an unreasonable risk of danger to public safety. (§ 1170.126, subd. (1).) The trial court may consider all of those concerns expressed by the majority opinion in its determination of risk, as well as any other relevant evidence. (See § 1170.126, subd. (g).)
The question before us is not whether defendant is dangerous, or the intent of the electorate in approving Proposition 36, but simply whether defendant was armed in the commission of the current offense. “ ‘[I]t is the availability—the ready access—of the weapon that constitutes arming.’ ” (People v. *1363 Bland, supra, 10 Cal.4th at p. 997.) On the record we were provided, it cannot be said that Valdez was armed in the commission of his constructive possession offense. Nor can it be said that my hypothetical defendant, long separated by time and distance from his gun, is forever armed with it and thereby ineligible to petition for recall of his sentence.
For these reasons, I respectfully disagree with the majority’s analysis and conclusion in part IV. B.
Appellant’s petition for review by the Supreme Court was granted August 9, 2017, S242240.

 Undesignated statutory references are to the Penal Code.

 To the extent an earlier case from this court does not appear to require witnessed or admitted availability of the weapon to the defendant during its discovery (see People v. Hicks (2014) 231 Cal.App.4th 275 [179 Cal.Rptr.3d 703] [defendant aimed where witnesses saw backpack containing gun in defendant’s possession at some point, but timing of backpack’s possession by defendant unclear]), I disagree for the reasons I have discussed.